UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACK RYAN, and
IRISHMANJACK LLC;

      Plaintiffs,

v.                        Case No. 8:26-cv-413-VMC-SPF

S&R INTERNATIONAL INC.,
SHANE STEPHENS,
CHRISTOPHER STONEBERG, and
WHC1 INC.,

      Defendants.

_____/

**ORDER**

This matter comes before the Court pursuant to Defendants S&R International Inc.'s (d/b/a White Hat Windows, "WHW") and Shane Stephens's Motion to Dismiss Plaintiffs' Complaint (Doc. # 26), filed on March 25, 2026. Plaintiffs Jack Ryan and IrishmanJack LLC responded in opposition on April 8, 2026. (Doc. # 34). For the reasons that follow, the Motion is granted in part and denied in part.

**I.    Background**

Mr. Ryan is "the sole member of IrishmanJack, LLC," which is a "Florida limited liability company with its principal place of business in Pinellas County, Florida." (Doc. # 1-1 at 1-2). Mr. Stephens is "the Chief Executive Officer and

1

owner of WHW," which is "a Florida corporation doing business in Pinellas County." (Id. at 2).

According to Plaintiffs, "[o]n or about January 5, 2023, WHW, through [Mr.] Stephens, entered into a verbal agreement with [Mr. Ryan and IrishmanJack] to pay commissions of 50% upon contract procurement and 50% upon contract completion." (Id.). It thus appears that the Complaint alleges Plaintiffs worked in a sales or contract procurement capacity on behalf of WHW since 2023. The Court observes that none of the pleadings identify the nature of WHW's or IrishmanJack's respective operations.

Plaintiffs state they "diligently procured contracts, contributing to WHW's sales of $1,277,766 since January 2023," and that they were "issued IRS Form 1099s for 2023 and 2024." (Id.). Plaintiffs allege the parties' agreement and course of dealing "established an implied contract under Florida law," and that Plaintiffs are entitled to "unpaid commissions totaling $92,613, of which $21,360 has been deliberately withheld through unlawful offsets." (Id.).

At some point in 2024 or 2025, Mr. Stephens "partnered with [Defendant Christopher Stoneberg] to expand WHW's operations, culminating in the formation of [Defendant WHC1, Inc.] on March 31, 2025." (Id.). Plaintiffs allege that, in

2

February 2025, Mr. Stoneberg "assum[ed] sole contact" with Plaintiffs and "exert[ed] influence over WHW's payment decisions." (Id.). Specifically, Plaintiffs claim that "Defendants mis-ordered an estimated $200,000–$250,000 in materials," and thereafter "[Mr.] Stoneberg and WHC1 induced WHW to withhold Plaintiffs' earned commissions to offset the cost of the mis-ordered materials and to fund WHC1's operations, actions that directly interfered with Plaintiffs' implied contract with WHW." (Id. at 3). The Court notes that none of the pleadings identify the nature of the "mis-ordered materials" or any details of the transaction.

On April 7, 2025, Plaintiffs "submitted two weeks' notice to terminate the implied contractual relationship." (Id.). On April 13, 2025, Mr. Stoneberg allegedly "rejected Plaintiffs' notice and imposed retaliatory conditions, demanding Plaintiffs work Monday through Saturday, pursue every lead provided, and face financial penalties for any errors." (Id.). Plaintiffs contend that "[t]hese demands evidence actual control, suggestive of actual employee status, undermining the Defendants' 1099s and independent contractor classification." (Id. at 4).

On April 19, 2025, "WHW issued a termination letter," which Plaintiffs contend was "an apparent attempt to evade

3

commission obligations." (Id. at 3). According to Plaintiffs, WHW's letter contained accusations of "a consistent failure to meet sales benchmarks and inappropriate and unprofessional conduct, specifically citing an incident where Plaintiffs allegedly had a drink with a customer on the job." (Id.). Further, WHW's letter allegedly "further required a 'full compliance review' before releasing commissions," which Plaintiffs argue was "never previously imposed" and "designed to stall and delay payment." (Id.). Plaintiffs argue that the accusations in WHW's letter are "baseless and lack[ing] any prior documentation or contractual basis." (Id.).

Finally, Plaintiffs allege that, at some point, Mr. Stoneberg "orchestrated the delivery of an Alcoholics Anonymous book from WHW's Palm Harbor address to harass and humiliate Plaintiffs, who have no history of alcoholism, in retaliation for demanding payment." (Id. at 4).

On October 31, 2025, Mr. Ryan and IrishmanJack filed their Complaint in state court against WHW, Mr. Stephens, Mr. Stoneberg, WHC1 Inc., and WHCI Inc. (Doc. # 1-1). On February 13, 2026, WHW and Mr. Stephens removed the action to this Court on the basis of federal question jurisdiction. (Doc. # 1 at 3). On April 7, 2026, Plaintiffs voluntarily dismissed their claims against WHCI Inc. without prejudice. (Doc. ##

4

32, 33). Accordingly, the remaining defendants in this action are WHW, Mr. Stephens, Mr. Stoneberg, and WHC1 Inc. (collectively, "Defendants").

Plaintiffs' Complaint asserts eleven claims, including: minimum wage violations of the Fair Labor Standards Act ("FLSA") (Count I), breach of implied contract under "federal common law" (Count II), unjust enrichment under "federal common law" (Count III), minimum wage violations of the Florida Minimum Wage Act ("FMWA") (Count IV), violations of the Florida Sales Representative Act (Count V), breach of implied contract under Florida law (Count VI), breach of implied covenant of good faith and fair dealing (Count VII), unjust enrichment under Florida law (Count VIII), wage theft under the Florida Minimum Wage Act (Count IX), retaliation and wrongful termination (Count X), and tortious interference with a contractual relationship (Count XI). (Doc. # 1-1 at 4-8). Counts I, III, IV, VIII, IX, and X are asserted against all Defendants. Counts II, V, VI, VII are asserted against WHW and Mr. Stephens only. Count XI is asserted against Mr. Stoneberg and WHC1 Inc. only.

WHW and Mr. Stephens filed their Motion to Dismiss on March 25, 2026. (Doc. # 26). Plaintiffs responded on April 8, 2026. (Doc. # 34). The Motion is ripe for review.

5

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

6

## III. **Analysis**

WHW and Mr. Stephens ("Movants") raise various arguments in the Motion. The Court addresses each separately.

### A. **Individual Liability of Mr. Stephens**

First, Movants argue that Plaintiffs' Complaint "does not plausibly allege a basis for imposing individual liability on [Mr.] Stephens." (Doc. # 26 at 3-4). Specifically, "[a]s to the wage claims," Movants contend the Complaint does "not allege facts showing that [Mr.] Stephens exercised the operational control necessary to be treated as an employer under the FLSA." (Id. at 3). Further, "[a]s to the contract-based claims," Movants contend the Complaint does "not plausibly allege that [Mr.] Stephens, in his individual capacity, was a party to the alleged commission arrangement," and that the Complaint "alleges no facts that would justify disregarding the corporate form or piercing the corporate veil." (Id. at 4).

In response, Plaintiffs argue that Mr. Stephens's individual liability is sufficiently pled because "Plaintiffs allege that [Mr.] Stephens was CEO and owner, that he participated in forming the commission agreement, was involved in operational decisions, and participated in corporate conduct affecting Plaintiffs." (Doc. # 34 at 4).

7

According to Plaintiffs, "these allegations are sufficient to establish potential individual liability under the FLSA and common law." (Id.).

Relevant here, the only allegations in the Complaint as to Mr. Stephens are (1) "Defendant Stephens is . . . the Chief Executive Officer and owner of WHW," (2) "WHW, through [Mr.] Stephens, entered into a verbal agreement with Plaintiffs," (3) Mr. "Stephens partnered with [Mr.] Stoneberg to expand WHW's operations," and (4) "[i]n February 2025, [Mr.] Stephens ceased all direct communication with Plaintiffs." (Doc. # 1-1 at 2).

The Court addresses Movants' arguments in turn.

### 1. Individual Liability under FLSA and FMWA

Under the FLSA, an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "[A] corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986). To establish a claim for individual liability, a plaintiff must show that the individual defendant was "involved in the day-to-day operation or ha[d] some direct responsibility for the

8

supervision of the employee." Id. at 638. "In evaluating individual liability, courts examine the 'economic reality of the relationship between the parties.'" Goude v. Emerge Healthcare Group, LLC, No. 6:22-cv-1511-RMN, 2024 WL 1940248, at *2 (M.D. Fla. Jan. 22, 2024) (citations omitted). "Factors considered include 'whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Id. (citation omitted). Operational control "need not be proved directly," and "[a] jury may infer such control from the exercise of general supervisory powers or the exercise of control over other employees." Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1313 (11th Cir. 2013). These same standards apply to wage claims under Florida state law. See Llorca v. Sheriff, Collier Cnty., 893 F.3d 1319, 1328 (11th Cir. 2018) ("The FMWA is to be interpreted as consistent with the FLSA.").

Here, Plaintiffs' Complaint sufficiently alleges Mr. Stephens's individual liability for Plaintiffs' wage-based claims under the FLSA and FMWA (Counts I, IV, and IX). Plaintiffs allege that Mr. Stephens is the CEO of WHW, and

thus a corporate officer of the corporation. (Doc. # 1-1 at 2). Plaintiffs also allege that Mr. Stephens, on WHW's behalf, negotiated and executed the commission agreement with Plaintiffs, and that Mr. Stephens partnered with Mr. Stoneberg to expand WHW's operations. (Id.). Further, Plaintiffs allege that Mr. Stephens ceased direct communications with Plaintiffs in February 2025. (Id.). Thus, viewed in the light most favorable to Plaintiffs, the Complaint sufficiently alleges facts indicating that Mr. Stephens (1) had the power to hire Plaintiffs as employees, (2) determined the rate and payment method of Plaintiffs' compensation (e.g., 50 percent commission), (3) was involved in the day-to-day operation of WHW, and (4) had some role in communicating with and supervising Plaintiffs, at least prior to February 2025.

Accordingly, the Motion is denied in part. The Complaint sufficiently pleads Mr. Stephens's individual liability under the FLSA and FMWA (Counts I, IV, and IX).

### 2. Individual Liability for Contract-Based Claims

As to the contract-based claims, the Complaint indeed alleges that the at-issue commission agreement was between WHW and Plaintiffs, not between Mr. Stephens and Plaintiffs. See (Id.) ("WHW, through [Mr.] Stephens, entered into a verbal

10

agreement with Plaintiffs to pay commissions . . ..") As Plaintiffs themselves allege, "WHW is a Florida corporation" and Mr. Stephens is the "owner of WHW." (Id.).

"Florida disregards the corporate entity in only the most extraordinary cases . . . [and] those who seek to pierce the corporate veil . . . carry a very heavy burden." Johnson v. New Destiny Christian Ctr. Church, Inc., 303 F. Supp. 3d 1282, 1286 (M.D. Fla. 2018) (citations omitted). "To establish a claim for piercing the corporate veil under Florida law, a plaintiff must allege that '(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form [was] used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.'" Alvarez Galvez v. Fanjul Corp., 533 F. Supp. 3d 1268, 1284 (S.D. Fla. 2021) (citations omitted).

Here, Plaintiffs' Complaint does not sufficiently allege Mr. Stephens's individual liability for Plaintiffs' contract-based claims (Counts II, III, VI, VII, and VIII). "Plaintiffs do not allege how [Mr. Stephens] controls or dominates [WHW] to such an extent that the Court should disregard the

11

corporate entity. Nor do Plaintiffs advance any allegations of improper or fraudulent use of the corporate form." See Id. In short, the Complaint fails to carry the heavy burden necessary for piercing the corporate veil, and thus fails to establish Mr. Stephens's individual liability for Plaintiffs' contract-based claims.

Accordingly, the Motion is granted in part. Plaintiffs' contract-based claims against Mr. Stephens in Counts II, III, VI, VII, and VIII are dismissed.

### B. Statutory Wage Claims

#### 1. Standing of IrishmanJack, LLC under the FLSA and FMWA

Next, Movants argue that "IrishmanJack, LLC cannot sue under the FLSA" because "IrishmanJack, LLC is a company, not an individual." (Doc. # 26 at 5). Plaintiffs do not address this argument in their response.

The FLSA authorizes suit by an "employee," and defines "employee" as "any individual employed by an employer." 29 U.S.C. §§ 203(e)(1), 216(b). The FLSA also expressly distinguishes "individuals" from other business entities. See, e.g., 29 U.S.C. § 203(a) ("'Person' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."). Thus,

12

the FLSA's statutory text and context show that Congress intended to limit the definition of an "employee" only to "individuals" and not business entities. These same standards apply to wage claims under Florida state law. See Llorca, 893 F.3d at 1328 ("The FMWA is to be interpreted as consistent with the FLSA.").

Accordingly, the Motion is granted in part. IrishmanJack, LLC may not assert FLSA or FMWA claims because it is not an "individual" under the FLSA. IrishmanJack, LLC's FLSA and FMWA claims against all Defendants in Count I and Count IV are dismissed.

### 2. Allegations of Hours Worked

Next, Movants argue that "[t]he Complaint does not plead a plausible minimum wage or overtime claim" because "Plaintiffs do not identify a single workweek, the number of hours worked in any workweek, the wages paid in any workweek, or facts showing that Ryan's effective hourly rate fell below the federal minimum wage in any workweek." (Doc. # 26 at 5). In response, Plaintiffs contend "[a] plaintiff need not identify each specific workweek or provide precise hour-by-hour accounting. Instead, Plaintiffs must allege they performed work, and they were not properly compensated." (Doc. # 34 at 4).

13

"[T]he requirements to state a claim of a FLSA violation are quite straightforward." Sec'y of Labor v. Labbe, 319 F. App'x 761, 763 (11th Cir. 2008). "The elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees. . . . There is no need to prove [] causation that might require more extensive pleading." Id.; see also Powell v. Morton Plant Mease Health Care, Inc., 174 F. App'x 520, 521 (11th Cir. 2006) (same); Blake v. Batmasian, 191 F. Supp. 3d 1370, 1374 (S.D. Fla. 2016) ("'[T]he Court rejects Defendant's argument that Plaintiff must specify the time period or approximate number of hours worked during a given period to state an FLSA claim.'" (quoting Anish v. Nat'l Sec. Corp., 10-80330-CIV-MARRA, 2010 WL 4065433, at *2 (S.D.Fla.2010))). These same standards apply to wage claims under Florida state law. Llorca, 893 F.3d at 1328.

Here, the Complaint plausibly alleges that Mr. Ryan was not paid the minimum wage compensation he was owed. That is enough for now. The Complaint's failure to specify workweeks or the number of hours worked does not warrant dismissal of the minimum wage claims. Accordingly, the Motion is denied as to this argument.

14

### 3. **Failure to adequately allege FLSA coverage**

Next, Movants argue Count I should be dismissed for failure to adequately allege FLSA coverage. (Doc. # 26 at 6).

"When enacting the FLSA, Congress plainly indicated its intention to leave local businesses to the protection of the state." Mayo v. Jean Nicole Hair Salons, Inc., No. 2:15-cv-115-SPC-MRM, 2015 WL 4751202, at *2 (M.D. Fla. Aug. 11, 2015) (citing Walling v. Jacksonville Paper Co., 317 U.S. 564, 570, (1943)). Thus, "[a]n employee seeking coverage under the FLSA must either establish the enterprise's or the individual's engagement in interstate commerce." Id. (citation omitted).

"For individual coverage, an employee must personally be (1) engaged in commerce or (2) engaged in the production of goods for commerce." Murillo v. Maximus Pro Sols. Corp., No. 3:24-cv-111-TJC-SJH, 2024 WL 5484091, at *3 (M.D. Fla. Sept. 6, 2024) (citation and quotation marks omitted). "For enterprise coverage, an employer must (i) have two or more employees with the requisite connection to commerce; and (ii) be an enterprise whose annual gross volume of sales made or business done is not less than $500,000." Id. (cleaned up).

"[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working

15

for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." Thorne v. All Restoration Services, Inc., 448 F.3d 1264, 1266 (11th Cir. 2006). Importantly, "[a] plaintiff 'need not do much' to plead individual or enterprise coverage, but must, at least, 'allege specific facts concerning the nature of the plaintiff's work and whether the work involved a connection to interstate commerce.'" Sims v. UNATION, LLC, 292 F. Supp. 3d 1286, 1292 (M.D. Fla. 2018) (citations omitted).

Here, Movants argue that Plaintiffs have failed to plausibly allege either individual or enterprise coverage under the FLSA, because "Plaintiffs do not even attempt to allege individual coverage . . . [and] [t]here are no allegations that Plaintiffs engaged in work outside of Florida or that was otherwise interstate in nature." (Doc. # 26 at 8). In response, Plaintiffs argue that they have sufficiently pled FLSA coverage because the Complaint alleges that (1) Defendants generated over $1.2 million in revenue, (2) Defendants operated a commercial business engaged in sales and services, and (3) Plaintiffs' work contributed

16

directly to that enterprise. (Doc. # 34 at 3-4). Plaintiffs then contend that "Defendants improperly demand detailed proof of interstate transactions and employee activities." (Id.).

Plaintiffs' arguments are unpersuasive. A plaintiff has the "obligation to provide the grounds of his entitlement to relief." Twombly, 550 U.S. at 555. Here, Plaintiffs' only allegation that is relevant to FLSA coverage is their allegation that WHW had "sales of $1,277,766 since January 2023." (Doc. # 1-1 at 2). While that allegation may satisfy one element of establishing enterprise coverage, it does not establish that Plaintiffs themselves "engaged in commerce" or that Defendants' had two or more employees "engaged in commerce." Murillo, 2024 WL 5484091, at *3. Indeed, none of the allegations in the Complaint provide any "specific facts concerning the nature of [Plaintiffs'] work and whether the work involved a connection to interstate commerce." Sims, 292 F. Supp. 3d at 1292 (citations omitted). In their Complaint, Plaintiffs state that all parties are Florida residents and that "the events giving rise to the claims occurred in Pinellas County." (Doc. # 1-1 at 1-2). As to the nature of Plaintiffs' work, the Complaint merely describes the purported agreement as one "to pay commissions of 50% upon

17

contract procurement and 50% upon contract completion." (Id. at 2).

At most, these allegations indicate that Plaintiffs worked in a sales or contract procurement capacity on behalf of WHW. But the Complaint does not allege any facts that establish Plaintiffs "work[ed] for an instrumentality of interstate commerce" or that Plaintiffs "regularly us[ed] the instrumentalities of interstate commerce." Thorne, 448 F.3d at 1266. Nor does the Complaint indicate whether any contracts procured by Plaintiffs on WHW's behalf involved an interstate connection, or whether any of WHW's business activities were ever performed outside of Florida. Thus, because the Complaint lacks allegations of an interstate connection, Plaintiffs have failed to state a claim under the FLSA.

Accordingly, the Motion is granted in part. Plaintiffs' FLSA claims against all Defendants in Count I are dismissed.

### 4. Injunctive Relief under the FLSA

Next, Movants argue that "Plaintiffs' request for injunctive relief is improper." (Doc. # 26 at 12). Movants state that "[p]rivate plaintiffs generally cannot obtain injunctive relief for FLSA wage claims because that enforcement authority rests with the Secretary of Labor." (Id. at 12-13). Movants thus contend that "the requested FLSA

18

injunctive relief should be stricken." (Id. at 13). Plaintiffs do not address this argument in their response.

Indeed, the Eleventh Circuit has held that "the right to bring an action for injunctive relief under the Fair Labor Standards Act rests exclusively with the United States Secretary of Labor." Powell v. State of Fla., 132 F.3d 677, 678 (11th Cir. 1998). Here, Plaintiffs' Complaint demands injunctive relief "[c]ompelling Defendants to rectify inaccurate records, cease retaliatory practices, and remit all commissions owed." (Doc. # 1-1 at 8). However, the Complaint does not specify whether Plaintiffs seek such relief under their FLSA claim or under their other claims.

Accordingly, the Motion is denied in part. At this stage of the proceedings, the Court declines to strike the demand for injunctive relief. Though Plaintiffs cannot obtain injunctive relief under the FLSA, such relief may be available under Plaintiffs' common-law claims.

## C. **Common Law Claims**

### 1. **Preemption**

As an initial matter, the Court addresses Movants' preemption argument. In challenging Plaintiffs' common-law claims for unjust enrichment (Counts III and VIII), Movants argue that Plaintiffs' "unjust enrichment counts simply

19

repackage the same alleged nonpayment underlying their FLSA and FMWA theories," and "Plaintiffs cannot use unjust enrichment to recover the same alleged unpaid wages or commissions they seek through their statutory wage claims." (Doc. # 26 at 17). In response, Plaintiffs contend that "unjust enrichment is properly pled in the alternative." (Doc. # 34 at 5).

"Plaintiffs are not permitted to circumvent the exclusive remedy prescribed by Congress by asserting equivalent state law claims in addition to a FLSA claim." Sanchez v. Bengoa Constr., Inc., No. 23-61770-CIV, 2024 WL 2797373, at *2 (S.D. Fla. Apr. 22, 2024) (cleaned up and citations omitted). "[S]tate common law claims that seek only unpaid overtime compensation or minimum wages that are guaranteed by the FLSA are preempted by federal law," but "common law claims that seek something other than what the FLSA can provide are not preempted." Hart v. JPMorgan Chase Bank, N.A., No. 8:12-cv-470-JDW-TBM, 2012 WL 12914660, at *1 (M.D. Fla. June 20, 2012) (citation omitted). In contrast, "the FLSA does not preempt state statutory wage laws, such as the FMWA." Sanchez, 2024 WL 2797373, at *3.

Here, the Complaint contends that Defendants' alleged "failure to pay $92,613 in commissions" constitutes a

violation of the FLSA. (Doc. # 1-1 at 4). The Complaint also contends that the failure to pay commissions constitutes (1) breach of implied contract under "federal common law" and Florida law (Counts II and VI), and (2) unjust enrichment under "federal common law" and Florida law (Counts III and VIII). (Id. at 5-6).

Accordingly, the Motion is granted in part. To the extent that Plaintiffs can maintain their FLSA claim (Count I), that claim preempts Plaintiffs' common-law claims for breach of implied contract and unjust enrichment (Counts II, III, VI, and VIII). See Cramer v. Favorite Healthcare Staffing, Inc., No. 6:20-cv-1808-RBD-EJK, 2022 WL 20667682, at *5 (M.D. Fla. Sept. 26, 2022) (finding the plaintiffs' "common law claims are preempted by the FLSA" because "the unpaid wages they claim under the common law are the same overtime wages they seek under the FLSA"); Sanchez, 2024 WL 2797373, at *3 (dismissing claims for breach of contract and unjust enrichment because they were "premised on facts identical to those supporting Plaintiff's FLSA claims"); Bule v. Garda CL Se., Inc., No. 14-21898-CIV, 2014 WL 3501546, at *3 (S.D. Fla. July 14, 2014) (dismissing claims for breach of implied agreement, quantum meruit, and unjust enrichment as preempted by FLSA claim because they "present the same material

21

allegations: the difference is the way Plaintiff classified these claims").

## 2. Claims under "Federal Common Law"

Next, Movants argue that Counts II and III should be dismissed because "there is no general federal common law" and "[n]othing in the Complaint plausibly places this commission dispute in [the] narrow category" where federal common law exists. (Doc. # 26 at 15-16, n.2, n.3). Plaintiffs do not address this argument in their response.

The Complaint purports to assert claims for breach of implied contract under "federal common law" (Count II) and unjust enrichment under "federal common law" (Count III). However, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. . . . There is no federal general common law." Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Exceptions exist only in "a few areas, involving 'uniquely federal interests,'" such as contract disputes with the United States and civil liability of federal officials. Boyle v. United Techs. Corp., 487 U.S. 500, 504-06 (1988).

No such interests exist here, and in any event, Counts II and III are duplicative of Plaintiffs' equivalent state common-law claims in Counts VI and VIII. See FCC Hotel Tower,

LLC v. Drummond, No. 2:23-cv-702-SPC-KCD, 2024 WL 1239262, at *1 (M.D. Fla. Mar. 22, 2024) ("Duplicative claims are those that stem from identical allegations, that are under identical legal standards, and for which identical relief is available. To promote judicial economy, a court should dismiss claims that are duplicative of other claims." (citations and quotation marks omitted)).

Accordingly, the Motion is granted in part. Plaintiffs' "federal common law" claims against all Defendants in Counts II and III are dismissed.

### 3. **Breach of Implied Contract**

Next, Movants contend that Count VI fails to state a claim for breach of implied contract because (1) Plaintiffs do not plead definite and enforceable terms, and (2) Count VI is barred by the statute of frauds. (Doc. # 26 at 13-15). In response, Plaintiffs state in full:

22. Defendants argue:

a. The agreement is too indefinite
b. The statute of frauds bars enforcement

23. Both arguments fail.

1. Definite Terms Exist

Plaintiffs allege a commission structure (50% procurement / 50% completion), that there was an established course of dealings, and that there were

23

consistent prior payments. Florida law recognizes that course of performance can supply missing terms, especially in commission-based relationships.

2. Statute of Frauds Does Not Apply

Defendants claim the agreement could not be performed within one year. This is incorrect. Each commission agreement was tied to individual jobs completed within weeks, making the agreement capable of performance within one year. Therefore, the statute of frauds does not apply.

(Doc. # 34 at 4-5).

The Court addresses Movants' arguments in turn.

### a. **Definite Terms**

"It is well settled that a contractual obligation between two parties need not be pursuant to an express provision in a written contract, but may be implied." Kindred Hosps. E., LLC v. Med. Mut. Services, LLC, No. 8:23-cv-1075-KKM-CPT, 2025 WL 2374027, at *24 (M.D. Fla. June 11, 2025) (cleaned up and citations omitted). "The principal, if not only, distinction 'between an express and implied-in-fact contract is the manner in which the parties' assent is manifested or proven.'" Id. (citation omitted). "A contract based on the parties' words is characterized as express, whereas a contract based on the parties' conduct is said to be implied-in-fact." Id. (citations omitted).

24

"[A] plaintiff asserting a claim for breach of an implied-in-fact contract under Florida law must show that there was a valid contract, a material breach, and resulting damages." Id. at *25 (citations omitted). "As to the first element of a valid contract, a plaintiff must demonstrate that an offer was made which sufficiently specified the essential terms, that there was an acceptance of that offer, and that there was consideration." Id. (citation omitted). "[W]hether an implied-in-fact contract exists is inferred from the particular facts and circumstances of the case." Id. (cleaned up and citation omitted). In general, "deciding whether an implied-in-fact contract was formed involves a fact-intensive inquiry that is better resolved after discovery." Id. (cleaned up and citation omitted).

Here, Plaintiffs have made sufficient allegations for their claims of breach of implied-in-fact contract, such that dismissal is not warranted. The Complaint alleges that WHW entered into a verbal agreement to pay Plaintiffs "commissions of 50% upon contract procurement and 50% upon contract completion, with contracts typically concluding within 4-6 or 6-8 weeks," and that WHW had a "consistent practice of issuing checks for prior completed jobs." (Doc. # 1-1 at 2). Viewed in the light most favorable to Plaintiffs,

25

these allegations suggest that WHW and Plaintiffs mutually assented to a contract in which Plaintiffs would provide sales or contract procurement services and WHW would pay Plaintiffs a commission of 50 percent. See, e.g., Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co., 658 F. Supp. 3d 1250, 1261 (S.D. Fla. 2023) (finding a complaint sufficient where the allegations "suggest that the parties mutually assented to a contract in which the Plaintiff would provide medical services . . . and the Defendant would reimburse the Plaintiff at [a specified] rate."); Chiron Recovery Ctr., LLC v. AmeriHealth Hmo of New Jersey, Inc., No. 9:16-CV-82043, 2017 WL 4390169, at *5 (S.D. Fla. Oct. 3, 2017) (finding the plaintiff pleaded sufficient facts to state a claim for breach of an implied-in-fact contract where the plaintiff alleged "it rendered services with [the defendant's] knowledge under circumstances suggesting that both [parties] understood [the plaintiff] was to be paid"). Moreover, the Complaint's allegations suggest that the parties "acted as if [WHW] had assented to pay for the services performed." Neurosurgical Consultants of S. Florida, LLC v. UnitedHealthcare Ins. Co., No. 22-81428-CIV, 2023 WL 3157504, at *3 (S.D. Fla. Apr. 27, 2023) (noting a plaintiff "is not required at this juncture

26

to allege that Plaintiff and Defendant assented as to particular prices.").

"At the very least, the question as to whether the parties' conduct gave rise to an implied-in-fact contract is best evaluated on a more complete record at a later stage in the litigation." Kindred, 2025 WL 2374027, at *24 (cleaned up and citations omitted); see also Vanguard, 658 F. Supp. 3d at 1262 (stating that "whether an implied-in-fact contract has been formed can be a fact-intensive inquiry better resolved after discovery" (citation omitted)).

Accordingly, the Motion is denied in part. Dismissal of Count VI for failure to plead "definite and enforceable terms" is not warranted.

### b. **Statute of Frauds**

"Under well-settled Florida law, the statute of frauds bars the enforcement of a contract where the parties intended and contemplated that performance of the agreement would take longer than one year." Dwight v. Tobin, 947 F.2d 455, 459 (11th Cir. 1991); see also First Realty Inv. Corp. v. Gallagher, 345 So. 2d 1088, 1089 (Fla. 3d DCA 1977) (recognizing that "[t]he primary factor to be utilized in determining whether or not an oral contract is to be performed within the one year limitation of the statute is, of course,

27

the intent of the parties"). "The intent of the parties may be inferred from the 'surrounding circumstances' or the 'object to be accomplished.'" Dwight, 947 F.2d at 459 (citation omitted).

"The statute of frauds is an affirmative defense, and a plaintiff is not required to plead satisfaction of the statute as an element of a claim." Hughes v. Priderock Capital Partners, LLC, No. 18-80110-CIV, 2018 WL 3699348, at *2 (S.D. Fla. May 31, 2018) (citation omitted), report and recommendation adopted, No. 9:18-CV-80110, 2018 WL 3699309 (S.D. Fla. June 18, 2018). Moreover, "the intent of the parties is a factual inquiry which makes a determination of the applicability of the statute of frauds improper on a motion to dismiss." Id. (citations omitted); see also Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1177 (M.D. Fla. 2005) ("The intent of the parties [for purposes of the statute of frauds] is a factual matter that cannot be resolved on a motion to dismiss.").

Here, nothing in the Complaint suggests that the parties contemplated that performance of the alleged commission agreement would require longer than one year. Rather, Plaintiffs allege that WHW entered into a verbal agreement to pay Plaintiffs for "commissions of 50% upon contract

28

procurement and 50% upon contract completion, with contracts typically concluding within 4-6 or 6-8 weeks," and that WHW had a "consistent practice of issuing checks for prior completed jobs." (Doc. # 1-1 at 2). Without more, Movants have not met their burden of establishing that the statute of frauds affirmative defense applies.

Accordingly, the Motion is denied in part. Dismissal of Count VI pursuant to the statute of frauds is not warranted at this stage of the proceedings.

### D. **Claims under the Florida Sales Representative Act**

Next, Movants contend that Count V of the Complaint should be dismissed because "it is based on Fla. Stat. § 686.201, a statute the Florida Legislature repealed effective July 1, 2011." (Doc. # 26 at 19). Plaintiffs respond that "[t]o the extent the Court finds any deficiency in this count, dismissal with prejudice is improper. At minimum, Plaintiffs should be granted leave to amend to assert the appropriate statutory or common law remedy." (Doc. # 34 at 6).

Indeed, the Florida Sales Representative Act was repealed effective July 1, 2011. See 2011 Fla. Laws ch. 2011-96, H.B. No. 4023, § 1 ("Section 686.201, Florida Statutes, is repealed."). And here, Plaintiffs' premise Count V upon conduct allegedly occurring during and after 2023. Dismissal

29

is proper where a statutory claim is based on conduct occurring after the relevant statute was repealed. See, e.g., Bay Promo, LLC v. Moncada, No. CV 20-12050-RGS, 2023 WL 8183633, at *1 n.1 (D. Mass. Nov. 27, 2023) ("Fla. Stat. § 686.201 was repealed well before Moncada asserted her counterclaims, so the court dismissed this Count on agreement by the parties."), aff'd sub nom. Alaniz v. Bay Promo, LLC, 143 F.4th 18 (1st Cir. 2025).

Accordingly, the Motion is granted in part. Plaintiffs' claims against all Defendants in Count V are dismissed.

### E. Claims for Wage Theft under FMWA

Next, Movants contend that Count IX should be dismissed because "Plaintiffs identify no standalone cause of action supporting that count." (Doc. # 26 at 19). Movants argue that Plaintiffs cannot rely on section 448.08 because "that statute is a fee-shifting provision, not an independent basis for liability." (Id.). Further, Movants argue that "[i]f Count IX is premised on section 448.110, it is duplicative of Counts I and IV because it repackages the same alleged nonpayment as another wage claim." (Id. at 20). Plaintiffs do not address this argument in their response.

In the Complaint, Count IX is titled "WAGE THEFT, FLA. STAT. §§ 448.110, 448.08 (AGAINST ALL DEFENDANTS)." (Doc. #

30

1-1 at 6). Under Count IX, Plaintiffs allege that "[t]he withholding of $21,360 through improper offsets and failure to pay $71,253 in earned wages constitutes wage theft under the Florida Minimum Wage Act (Fla. Stat. § 448.110)" and that "Plaintiffs are entitled to reasonable attorney's fees and costs under Fla. Stat. § 448.08." (Id. at 6-7).

The Court agrees with Movants. First, "Section 448.08 does not create or otherwise provide for a cause of action for back wages; it relates instead to payment of attorneys' fees to a prevailing party in an action for back wages." Short v. Bryn Alan Studios, Inc., No. 8:08-cv-145-JSM-TGW, 2008 WL 2222319, at *3 (M.D. Fla. May 28, 2008) (citations omitted). Thus, Count IX cannot be premised on section 448.08.

Second, Count IX is duplicative of Count IV. Count IV asserts a claim for "VIOLATION OF FLORIDA MINIMUM WAGE ACT, FLA. STAT. § 448.110 (AGAINST ALL DEFENDANTS)" and alleges that "[t]he deliberate withholding of $21,360 via offsets constitutes wage theft, entitling Plaintiffs to double damages." (Doc. # 1-1 at 5). Thus, Counts IV and IX are duplicative because they are (1) both brought under the FMWA, and (2) both premised on the alleged withholding of $21,360 through offsets. See FCC Hotel Tower, LLC, 2024 WL 1239262, at *1 ("Duplicative claims are those that stem from identical

31

allegations, that are under identical legal standards, and for which identical relief is available. To promote judicial economy, a court should dismiss claims that are duplicative of other claims." (citations and quotation marks omitted)).

Accordingly, the Motion is granted in part. Plaintiffs' FMWA wage theft claims against all Defendants in Count IX are dismissed.

### F. <u>Claims for Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Next, Movants contend that "Count VII should be dismissed because Florida law does not recognize a free-standing claim for breach of the implied covenant of good faith and fair dealing." (Doc. # 26 at 20). Movants argue that "[t]he implied covenant must attach to the performance of an express contractual term and cannot be used to create obligations the contract itself does not impose." (<u>Id.</u>). In response, Plaintiffs state in full:

> 25. Defendants argue the implied covenant claim fails absent an express term.
>
> 26. But Plaintiffs allege there was a commission agreement, bad-faith withholding of earned compensation, and manipulation of payment conditions. The implied covenant applies to the performance of contractual obligations, including payment and timing. This is sufficient at the pleading stage.

(Doc. # 34 at 5).

Relevant here, the allegations under Count VII contend that "Defendants' retaliatory termination, baseless allegations, sham compliance review, and harassment violate the implied covenant of good faith inherent in all contracts under Florida common law." (Doc. # 1-1 at 6).

"While 'every contract contains an implied covenant of good faith and fair dealing' under Florida law, a breach of this covenant — standing alone — does not create an independent cause of action." Resnick v. AvMed, Inc., 693 F.3d 1317, 1329 (11th Cir. 2012) (citation omitted). "The duty of good faith must 'relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements.'" Id. (citation omitted). "A claimant asserting a cause of action for breach of the implied covenant must allege 'a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party.'" Id. (citation omitted).

33

"Failure to identify an express contractual provision that has been breached dooms [a plaintiff's] claim for breach of the implied covenant of good faith and fair dealing." Burger King Corp. v. Weaver, 169 F.3d 1310, 1318 (11th Cir. 1995); see also Shibata v. Lim, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) ("A cause of action for breach of the implied covenant cannot be maintained . . . in the absence of an express term of the underlying contract").

Here, Count VII premises the claim for breach of the implied covenant on Defendants' alleged "retaliatory termination, baseless allegations, sham compliance review, and harassment." (Doc. # 1-1 at 6). But Plaintiffs do not identify any express contractual provisions that relate to this conduct. And to the extent that Plaintiffs now seek to premise Count VII on the alleged failure to pay commissions, the Complaint fails to provide adequate notice of Plaintiffs' claim under Count VII. See Gladney v. Consumers Credit Union, No. 13-13959, 2024 WL 2797914, at *4 (11th Cir. May 31, 2024) (per curiam) (stating the plaintiff "could not cure the deficiencies in his amended complaint by asserting additional facts in his response to [defendant's] motion to dismiss").

Accordingly, the Motion is granted in part. Plaintiffs' claims for breach of implied covenant against all Defendants in Count VII are dismissed.

### G. **Claims for Retaliation**

Next, Movants contend that "Count X for retaliation should be dismissed because it does not identify a viable cause of action and does not allege protected activity." (Doc. # 26 at 22). In response, Plaintiffs state in full:

> Plaintiffs allege they demanded payment of earned wages and the Defendants responded with termination and harassment, and that the Defendants imposed retaliatory conditions. Additionally, Defendants' argument ignores the timing of events and the alleged retaliatory conduct preceding and surrounding termination. These allegations plausibly establish retaliation.

(Doc. # 34 at 5).

Relevant here, the allegations under Count X contend that "[t]he preemptive termination letter, baseless allegations of poor performance and misconduct, delivery of an Alcoholics Anonymous book, and [Mr.] Stoneberg's retaliatory demands violate Florida's public policy against retaliation for wage demands." (Doc. # 1-1 at 7) (citing Scott v. Otis Elevator Co., 524 So. 2d 642 (Fla. 1988); and Fla. Stat. § 448.045).

35

As stated by the Supreme Court of Florida in Scott, "Florida does not recognize a common law cause of action for retaliatory discharge." Scott, 524 So. 2d at 643 (citation omitted). "The legislature, however, enacted section 440.205 . . . creating [a] distinct limited statutory cause of action [] for retaliatory discharge in the area of workers compensation." Id. That statute provides that "[n]o employer shall discharge . . . or coerce any employee by reason of such employee's . . . attempt to claim compensation under the Workers' Compensation Law." Fla. Stat. § 440.205. But, here, Plaintiffs do not bring workers' compensation claims, but rather minimum wage claims. Accordingly, Scott and section 440.205 do not provide a viable cause of action for Count X.

The Complaint's citation to section 448.045 is also unavailing. That statute provides that "[i]f two or more persons . . . combine . . . to cause the discharge of any person from work . . . or . . . threaten any injury to . . . any person for the purpose of procuring the discharge . . . such persons so combining shall be deemed guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083." Fla. Stat. § 448.045. As a criminal statute, section 448.045 does not provide a private cause of action. See Irwin v. Miami-Dade Cnty. Pub. Sch., No. 06-

36

23029CIV, 2009 WL 497648, at *5 (S.D. Fla. Feb. 25, 2009) ("Fla. Stat. § 448.045 cannot be sued upon in a private cause of action"), aff'd, 398 F. App'x 503 (11th Cir. 2010); Morrison v. Morgan Stanley Properties, No. 06-80751CIV, 2007 WL 2316495, at *10 (S.D. Fla. Aug. 9, 2007) (same).

However, dismissal is not warranted simply because the Complaint misidentified the cause of action for retaliation. "[A]t a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 684 (11th Cir. 2001) (citation omitted).

Here, the FMWA and FLSA both provide a viable cause of action for retaliation. "Under the FMWA it is unlawful for an employer to take adverse action against employees in retaliation for exercising rights protected by Article X, Section 24 of the Florida Constitution, Florida's constitutional amendment governing the right to a minimum wage." Payne v. Sec. & Crime Prevention Serv., Inc., No. 12-22032, 2013 WL 5446466, at *4 (S.D. Fla. Sept. 30, 2013) (citing Fla. Stat. § 448.110(5)). Similarly, "[t]he FLSA forbids any person 'to discharge or in any other manner

37

discriminate against any employee because such employee has filed any complaint' alleging a violation of the Act." Id. at *3 (citing 29 U.S.C. § 215(a)(3)). "To establish a retaliation claim, a plaintiff must show that 1) he was engaged in protected activity under the FLSA; 2) he suffered an adverse action by his employer; and 3) a causal connection exists between Plaintiff's activity and the adverse action." Id.

As to the first element, the Complaint sufficiently alleges protected activity. "Informal, oral complaints about compensation constitute protected activity under the FLSA." Davidson v. Patel, No. 1:22-CV-3934-SEG, 2023 WL 10406725, at *5 (N.D. Ga. Sept. 30, 2023); see also Earle v. Miami Dade Cnty., No. 24-20270-CIV, 2024 WL 5058210, at *3 (S.D. Fla. May 21, 2024) ("An oral complaint is protected conduct under the FLSA's anti-retaliation provision." (citation omitted)). Here, Plaintiffs' Complaint alleges that "[e]ach Friday, Plaintiffs sought payment at WHW's Palm Harbor offices, only to receive excuses and no checks." (Doc. # 1-1 at 3). Viewed in the light most favorable to Plaintiffs, "these allegations suffice to show a protected activity, for they sufficiently describe an assertion of rights about failure to pay wages." Davidson, 2023 WL 10406725, at *5.

38

Accordingly, the Motion is denied in part. Dismissal of the retaliation claims is not warranted on these grounds. Further, Count X is not duplicative of Counts I and IV because those counts relate to minimum wage claims, not retaliation.

### H. Shotgun Pleading

Finally, Movants argue that the Complaint is a shotgun pleading, because it "fails to give each defendant fair notice of the claims against him and the factual basis for each claim." (Doc. # 26 at 23-24). Plaintiffs respond stating "[t]he Complaint details how Defendants collectively and individually withheld commissions, controlled Plaintiffs' work, and interfered with contractual relationships. This is sufficient to provide fair notice." (Doc. # 34 at 3).

The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings." Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321 (11th Cir. 2015).

> The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally,

there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Id. at 1321-32.

Here, each cause of action in the Complaint is separated into eleven different counts, and the heading of each count indicates whether it is brought "against all Defendants," "against WHW and [Mr.] Stephens," or "against [Mr.] Stoneberg and WHC1." (Doc. # 1-1). Although each of the counts "incorporate paragraphs 1–32" (i.e., the Complaint's "factual allegations" section), the counts do not adopt the allegations of all preceding counts. Further, the Court does not find the Complaint to be "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Weiland, 792 F.3d at 1321.

The Motion is denied in part. The Court finds that the Complaint is not a shotgun pleading.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants S&R International Inc.'s and Shane Stephens's Motion to Dismiss Plaintiffs' Complaint (Doc. # 26) is **GRANTED** in part and **DENIED** in part. The Complaint is **DISMISSED** without prejudice to the extent stated herein.

40

(2)  If they wish to amend the dismissed claims, Plaintiffs Jack Ryan and IrishmanJack LLC must file an amended complaint within fourteen days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>3rd</u> day of June, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

41